UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 04-61212-CIV-LENARD/KLEIN

HOLLYWOOD COMMUNITY
SYNAGOGUE, INC.,

     Plaintiff,

v.

CITY OF HOLLYWOOD, FLORIDA,
and SAL OLIVERI, individually,

     Defendants.

_____/



## JOINT MOTION TO APPROVE CONSENT DECREE AND CONSENT ORDER

The parties, by and through their undersigned counsel, and pursuant to Local Rule 7.1, hereby files this Joint Motion[1] to Approve Consent Decree and Consent Order, and state as follows:

1.     On July 4, 2006, Defendant, City of Hollywood (herein "City"), formally approved Resolution No. R-2006-208, which contains the terms of an offer from the City to the Synagogue to settle this matter. A copy of Resolution No. R-2006-208 is attached hereto as Exhibit "1". Attached as Exhibit "A" to the Resolution is a proposed Consent Decree. The City's Resolution No. R-2006-208 specifically authorizes entry of the Consent Decree attached thereto. Hollywood Community Synagogue has accepted the terms proposed in Resolution R-2006-208, and the proposed Consent Decree.

---

[1]  While the parties have all joined in the instant motion, as indicated in the e-mails attached hereto as Composite Exhibit "3", they have not all signed the motion due to time constraints for filing documents with the Court by 3:00 p.m. today.

2.      Further, Paragraph 1(H) of the Resolution R-2006-208 requires entry of that certain Consent Order by and between United States Department of Justice and the City, a copy of which is attached hereto as Exhibit "2".

3.      In order for the Court to enter the attached Consent Decree, public notice and a hearing may be required as certain aspects of the Consent Decree and the Consent Order could possibly be construed as a zoning change. *See Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1009-1015 (7th Cir. 1980).

4.      The Parties request that if this Court finds the terms of the respective Consent Decree and Consent Order to be satisfactory, that this Court execute at this time the Consent Decree and the Consent Order, subject to a public hearing to be set by the Court, if this Court deems that such a hearing is required.  If such a hearing is required, the City agrees to provide such proper notice to the citizens of the City as directed by the Court.

5.      The City, Oliveri and the DOJ concur with the relief sought in this Motion, to the extent of requesting that the Court enter the Consent Decree and Consent Order, however, the City, Oliveri and the DOJ reserve their rights relative to whether a public hearing is required as to the terms of the Consent Decree and Consent Order. *See* e-mails from counsel for the City, Oliveri and the DOJ attached hereto as Composite Exhibit "3".

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via U.S. Mail and E-Mail to Robert M. Oldershaw, Esquire, Chief Litigation Counsel, City of Hollywood, Florida, 2600 Hollywood Boulevard, Room 407, Hollywood, Florida 33021, Thomas J. McCausland, Esq., Conroy, Simberg et al, 3440 Hollywood Blvd., Second Floor, Hollywood, FL 33021 and W. Todd Boyd, Esq., Boyd, Mustelier, Smith & Parker, P.L., counsel

for Oliveri, Bank of America Tower at International Place, 100 S.E. 2nd St., 36th Floor Miami, Florida, 33131, Sean Keveney, Esq. and R. Tamar Hagler, Esq., U.S. Department of Justice, Housing and Civil Enforcement Section, Civil Rights Division, 950 Pennsylvania Avenue, N.W., G Street, Washington, D.C. 20530 and Marilynn Lindsey, Esq., U.S. Department of Justice, 500 E. Broward Blvd., Suite 700, Fort Lauderdale, FL 33394, on this 5th day of July, 2006.

**ARNSTEIN & LEHR LLP**
Counsel for Plaintiff
200 East Las Olas Blvd.
Suite 1700
Fort Lauderdale, Florida 33301
Phone: (305) 713-7600
Fax: (305) 713-7700
flzemel@arnstein.com
jtgordon@arnstein.com

By: _____

Franklin L. Zemel, Esq.
Florida Bar No. 816620
Jason Gordon, Esq.
Florida Bar No. 0012973

RESOLUTION NO. *R-2006-208*

CERTIFICATION

I certify this to be a true and correct copy of the record in my office. WITNESSETH my hand and official seal of the City of Hollywood, Florida, this the ___ day of ___, 20___.

_____ City Clerk

A RESOLUTION OF THE CITY COMMISSION OF THE CITY OF HOLLYWOOD, FLORIDA, MAKING A COUNTEROFFER TO THE HOLLYWOOD COMMUNITY SYNAGOGUE'S PROPOSED SETTLEMENT OFFER.

WHEREAS, the City filed a civil action against Scott Kramer and the Hollywood Community Synagogue, Inc. (the "Synagogue") in Case No. 04-011444 (21) in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida;

WHEREAS, the Synagogue and the United States then filed a civil action against the City of Hollywood, Florida and Sal Oliveri in consolidated Case Nos. 04-61212 and 05-60687 in the United States District Court for the Southern District of Florida;

WHEREAS, the Synagogue filed a civil action against the City, Mara Giulianti, Peter Bober, Quentin Furr and Sal Oliveri in Case No. 06-003010 (08) in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida;

NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF HOLLYWOOD, FLORIDA:

Section 1: That it hereby makes a counteroffer to settle the above-described lawsuits and agrees to the entry of a Consent Decree, containing the following terms:

(A)   Payment of $2,000,000.00 to the Synagogue to be paid by National Union Fire Insurance Company of Pittsburgh, Pa;

(B)   The Synagogue shall have the right to operate a place of worship in perpetuity as a matter of right (i.e. as a main permitted use which is also sometimes referred to as a "first-permitted use"), at the properties located at 2215 and 2221 North 46th Avenue, Hollywood, Florida. These two properties shall be exempt from the City's parking requirements, as contained in the City's Code of Ordinances and/or Zoning and Land Development Regulations (herein "ZLDR"), or as amended, revised or otherwise at any time in the future. The Synagogue shall have the right to demolish the two structures currently located at 2215 and 2221 North 46th Avenue in order to build a facility on the properties, subject to state and local building and fire codes and regulations and current development standards (i.e. setbacks and height restrictions) applicable to current special exception uses;

(C)   For the three year period commencing from the date of entry of the Consent Decree, the Synagogue shall have the right to acquire one parcel contiguous to or abutting the properties located at 2215 North 46th Avenue or 2221 North 46th Avenue for use, as a matter of right, as a parking lot for a place of worship so long as such parking lot



EXHIBIT

1

complies with all applicable codes, other than that portion of the City's Zoning and Land Development Regulations that prohibits parking lots in single-family districts;

(D)  Commencing three years after the date of entry of the Consent Decree, the Synagogue shall have the right to acquire not more than two (2) additional parcels in the area bounded on the South by West Park Road, on the North by Sheridan Street, on the West by North 47th Avenue, and on the East by North 45th Avenue, to maintain thereon, as a matter right (i.e. as a main permitted use which is also sometimes referred to as a "first-permitted use"), any use pursuant to the version of Section 4.1 of the City's ZLDR in existence at the time of entry of this Resolution which requires a special exception, so long as such use is for residential or a Section 4.1 ZLDR use and the Synagogue complies with all other applicable codes, including all parking requirements.  As to any additional properties which may be purchased by the Synagogue after the period commencing three years from the date of entry of the Consent Decree, whether within the bounded area or otherwise, the Synagogue must, if otherwise applicable, apply for a special exception for those additional properties, pursuant to the special exception procedure in existence at the time of filing of the application, in order to use any such property for a section 4.1 ZLDR use;

(E)  Notwithstanding anything contained herein to the contrary, the Synagogue's entitlement to maintain, as a matter of right, those uses contained in the version of Section 4.1 of the City's ZLDR in existence at the time of entry of this Resolution which require a special exception, on its properties located at 2215 North 46th Avenue and 2221 North 46th Avenue, and those additional parcels acquired pursuant to section (C) or (D) above, shall be transferable (i.e. "portable"), in perpetuity, upon the Synagogue providing written notice to the City Attorney to the property located at 1400 North 46th Avenue (commonly known as "Temple Sinai").  Upon the Synagogue providing such written notice to the City Attorney, the Synagogue shall have the right to continue using its properties located at 2215 and 2221 North 46 Avenue, and any properties acquired by the Synagogue pursuant to sections (C) or (D) above as a matter of right, for a period of thirty (30) days from the date a certificate of occupancy requested by the Synagogue is issued.  Upon expiration of said thirty (30) days, the section 4.1 ZLDR use rights at its existing properties shall cease.

(F)  The City shall adopt a constitutional and RLUIPA-compliant special exception ordinance;

(G)   The City shall be enjoined from selective enforcement and/or harassment of the Synagogue;

(H)  All of the terms contained in the Consent Order previously proposed by the United States are accepted, except that Section 34 thereof shall be amended to conform to the terms set forth in paragraph nos. 1 through 4 of the Consent Decree as between the City and the Synagogue.  The Synagogue shall have standing to independently enforce the terms of the Consent Order between the Department of Justice and the City;

of the record in my office.
WITNESSETH my hand and official seal of
the City of Hollywood, Florida, this the

4 day of July 2006

_____ City Clerk

(I)  The City, the Synagogue and the United States shall dismiss all pending lawsuits and enter into appropriate settlement agreements and releases;

(J)  Any settlement of this matter between the parties is contingent upon the Court entering the Consent Decree as between the City and the Synagogue and the Consent Order as between the City and the Department of Justice.

Section 2:  That it hereby approves and authorizes the execution, by the appropriate City officials, of all documents necessary to implement the settlement described in Section 1 above, including the Consent Decree attached hereto as Exhibit "A," together with such nonmaterial changes as may be subsequently agreed to by the City Manager and approved as to form and legality by the City Attorney.

Section 3:  That this resolution shall be in full force and effect immediately upon its passage and adoption.

PASSED AND ADOPTED this *29* day of *June*_____, 2006.


_Frances Russo_
FRANCES RUSSO, VICE-MAYOR

ATTEST:

_Patricia Cerny_
PATRICIA A. CERNY, MMC
CITY CLERK

APPROVED AS TO FORM & LEGALITY
for the use and reliance of the
City of Hollywood, Florida only:

_D. L. Abbott_
DANIEL L. ABBOTT, CITY ATTORNEY


CERTIFICATION

I certify this to be a true and correct copy of the record in my office.
WITNESSETH my hand and official seal of the City of Hollywood, Florida, this the

*4* day of *July* 20*06*

_Patricia Cerny_  City Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 04-61212-CIV-LENARD/KLEIN

HOLLYWOOD COMMUNITY
SYNAGOGUE, INC.,
     Plaintiff,

v.

CITY OF HOLLYWOOD, FLORIDA,
and SAL OLIVERI, individually,
     Defendants.

_____/

## CONSENT DECREE

WHEREAS Hollywood Community Synagogue, Inc. (herein "Synagogue") and City of Hollywood (herein "City") (collectively "the Parties") have agreed to entry by the Court of this Consent Decree and whereas the Parties shall be bound by the findings, conclusions and orders of this Consent Decree, it is ordered, adjudged and decreed as follows:

    1.    In light of the Court's June 26, 2006 Order, a copy of which is attached hereto as Exhibit "A," the Court orders that the Synagogue's properties located at 2215 N. 46th Avenue and 2221 N. 46th Avenue (collectively herein "Properties") shall be deemed rezoned to allow the Synagogue to operate a house of worship in perpetuity as a matter of right (i.e. as a "main permitted use" which is also sometimes referred to as a "first-permitted use") at its Properties. These two properties shall be exempt from the City's parking requirements, as contained in the City's Code of Ordinances and/or Zoning and Land Development Regulations (herein "ZLDR"), or as amended, revised or otherwise at any time in the future. The Synagogue shall have the right to demolish the two structures currently located at 2215 and 2221 North 46th Avenue in order to build a facility on the properties, subject to state and local building and fire codes and regulations and current development standards (e.g. setbacks and height restrictions) applicable to current special exception uses. Further, any such properties shall not be deemed "legal non-conforming" as a result of any such future land use or zoning legislation adopted by the City.

    2.    For the three year period commencing from the date of entry of the Consent Decree, the Synagogue shall have the right to acquire one parcel contiguous to or abutting the properties located at 2215 North 46th Avenue or 2221 North 46th Avenue for use, as a matter of right, as a parking lot for a place of worship so long as such parking lot complies with all applicable codes, other than that portion of the City's Zoning and Land Development Regulations that prohibits parking lots in single-family districts. However, the Synagogue shall also have the right to either designate one of its then existing three parcels to provide the required number of parking spaces for

1



a place of worship, or to provide the required number of parking spaces for a place of worship amongst or between all three parcels. Further, the Synagogue, at its election, can defer purchasing one property for use, as a matter of right, as a parking lot to any time subsequent to three years after the date of entry of the Consent Decree, as set forth in paragraph (3) below. Further, the Synagogue shall not apply for a special exception within the three years following the date of entry of this Consent Decree.

3.  Commencing three years after the date of entry of the Consent Decree, the Synagogue shall have the right to acquire not more than two (2) additional parcels in the area bounded on the South by West Park Road, on the North by Sheridan Street, on the West by North 47th Avenue, and on the East by North 45th Avenue, to maintain thereon, as a matter right (i.e. as a main permitted use which is also sometimes referred to as a "first-permitted use"), any use pursuant to the version of Section 4.1 of the City's ZLDR in existence at the time of entry of this Consent Decree which requires a special exception, so long as such use is for residential or a Section 4.1 ZLDR use and the Synagogue complies with all other applicable codes, including all parking requirements. If the Synagogue does not construct a parking lot for a place of worship during the three year period commencing from the date of entry of the Consent Decree, as set forth in paragraph (2) above, the Synagogue shall have the right to designate one or more of its then existing parcels to provide the required number of parking spaces for a place of worship, or to provide the required number of parking spots amongst or between the Synagogue's then existing parcels. As to any additional properties which may be purchased by the Synagogue after three years from the date of entry of the Consent Decree, whether within the bounded area or otherwise, the Synagogue must, if otherwise applicable, apply for a special exception for those additional properties, pursuant to the special exception procedure in existence at the time of filing of the application, in order to use any such property for a section 4.1 ZLDR use.

4.  Notwithstanding anything contained herein to the contrary, the Synagogue's entitlement to maintain, as a matter of right, those uses contained in the version of Section 4.1 of the City's ZLDR in existence at the time of entry of this Resolution which require a special exception, on its properties located at 2215 North 46th Avenue and 2221 North 46th Avenue, and those additional parcels acquired pursuant to paragraphs (2) or (3) above, shall be transferable (i.e. "portable"), in perpetuity, upon the Synagogue providing written notice to the City Attorney, to the property located at 1400 North 46th Avenue (commonly known as "Temple Sinai"). Upon the Synagogue providing such written notice to the City Attorney, the Synagogue shall have the right to continue using its properties located at 2215 and 2221 North 46 Avenue, and any properties acquired by the Synagogue pursuant to paragraphs (2) or (3) above as a matter of right, for a period of thirty (30) days from the date a certificate of occupancy requested by the Synagogue is issued. Upon expiration of said thirty (30) days, the section 4.1 ZLDR use rights at its existing properties shall cease.

5.  The City's code enforcement and police departments, including all code enforcement officers, police officers, employees, agents and representatives of both departments are permanently enjoined from selectively enforcing and harassing the Synagogue through the application of any

2

provision of the City's Code of Ordinances, ZLDR and any other City ordinances, codes, regulations, resolutions or otherwise. The permanent enjoinment from selective enforcement and harassment also applies to the Synagogue's members, guests, invitees, employees, agents, representatives or otherwise, who are present at the Synagogue's current Properties and any properties the Synagogue may subsequently purchase or acquire an ownership interest in.

6.      The Synagogue shall be paid $2,000,000 by the Defendants, inclusive of all fees and costs, within twenty (20) days from the date this consent decree is entered by the Court. The $2,000,000 shall be paid to Arnstein & Lehr, LLP's Trust Account.

7.      The City of Hollywood shall adopt a constitutional and RLUIPA compliant special exception ordinance.

8.      The action filed in Broward County Circuit Court by the City against the Synagogue, Case No. 04-011444 (21), and the action filed in Broward County Circuit Court by the Synagogue against the City, the Mayor and Commissioners Peter Bober, Quentin Furr and Sal Oliveri, Case No. 06-003010 (08), shall both be dismissed with prejudice, each party to bear its own attorneys' fees and costs.

9.      Simultaneously herewith, the Court is entering that certain Consent Order between the City and the DOJ, the terms of which having already been negotiated and agreed to by and between the DOJ and the City. The Synagogue shall have standing to independently enforce the terms of the Consent Order between the Department of Justice and the City.

10.     The parties shall execute mutual releases which fully, finally, and forever release and discharge each other, Sal Oliveri, Mara Giuliani, Peter Bober, Quentin Furr and National Union Fire Insurance Company of Pittsburgh, PA, its parent, subsidiaries and affiliates, including AIG Domestic Claims, Inc. (collectively "National Union"), including their heirs, parents, subsidiaries, affiliates, shareholders, members, officers, directors, employees, attorneys, representatives, managers, predecessors, successors, assigns, and their respective shareholders, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, administrators, or any of them from liability for all acts and events occurring up to the date of execution of this Consent Decree including any and all claims, rights, demands, causes of action, suits, matters, and issues whether known or unknown, hidden, suspected or unsuspected, liquidated or unliquidated, and whether based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other basis, that have been, could have been, may be, or could be alleged or asserted, now or in the future, whether before a court of law or before any court, tribunal, arbitration panel, or other adjudicatory body, based on any fact or matter from the beginning of time through and including the date hereof. These mutual releases, however, shall have no effect upon or otherwise prevent enforcement of this Settlement Consent Decree.

11.     The Parties represent and warrant that they have the sole right and exclusive authority to execute this Consent Decree and to receive the sum specified in it; and that there has not been, nor

will there be, as of the date hereof, an effective assignment or other transfer of any interest in any claim by the Synagogue.

12.     The Parties have declared to the Court that they have had the benefit of advice from their attorneys, and the terms of this Consent Decree have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise of any and all claims.

13.     This Consent Decree shall be binding upon and inure to the benefit of the Parties, their estates, heirs, legal representatives, successors, predecessors, parent companies, subsidiaries, affiliates, insurers, owners, directors, members, managers, officers, partners, representatives, shareholders, employees, agents, and assigns.

14.     This Consent Decree shall be governed by the laws of the State of Florida and by the laws of the United States, where applicable.

15.     Should it be necessary for any party to enforce any terms of this Consent Decree, the prevailing party in such an enforcement action, may be entitled to its reasonable attorneys' fees and costs expended to enforce the terms of this Consent Decree, as determined by the Court.

16.     By entering into this Consent Decree, all parties hereby agree to waive their right to appeal any of the terms and provisions of this consent decree.

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida  this ___ day of _____, 2006.

_____
U.S. DISTRICT COURT JUDGE

Copies Furnished to:
Franklin L. Zemel, Esq.
Thomas J. McCausland, Esq.
Robert M. Oldershaw, Esq.
W. Todd Boyd, Esq.
Sean Keveney, Esq.
Marilynn Lindsey, Esq.

Final

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-61212-CIV-LENARD/KLEIN
[CONSOLIDATED WITH CASE NO. 05-60687-CIV-LENARD/KLEIN]

**HOLLYWOOD COMMUNITY SYNAGOGUE, INC.,**

      Plaintiff,

vs.

**CITY OF HOLLYWOOD, FLORIDA, and SAL OLIVERI, individually,**

      Defendants.

_____/

FILED by ____ D.C.

JUN 2 6 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES OF AMERICA,**

      Plaintiff,

vs.

**CITY OF HOLLYWOOD,**

      Defendant.

_____/

## ORDER GRANTING PLAINTIFF HOLLYWOOD COMMUNITY SYNAGOGUE'S MOTION FOR PARTIAL SUMMARY JUDGMENT (D.E. 225)

    **THIS CAUSE** is before the Court on Plaintiff Hollywood Community Synagogue's

Motion for Partial Summary Judgment ("Motion," D.E. 190), filed on March 21, 2006.  On

April 20, 2006, Defendant City of Hollywood ("Defendant" or "the City") filed a Response.



**EXHIBIT "A"**

("Response," D.E. 243.) On May 2, 2006, Plaintiff filed a Reply. ("Reply," D.E. 260.) On May 25, 2006, the City filed a Notice of Supplemental Authority. ("Supplement," D.E. 301.) On June 1, 2006, Plaintiff filed a Memorandum of Law in Opposition to Defendant's Supplement. ("Response to the Supplement," D.E. 319.) Having considered the Motion, the Response, the Reply, the Supplement, the Response to the Supplement, and the record, the Court finds as follows:

## I.    Factual and Procedural Background

On September 15, 2004, Plaintiff Hollywood Community Synagogue (hereinafter "HCS" or "the Synagogue") filed a Complaint against Defendants City of Hollywood and Sal Oliveri (Case No. 04-61212-CIV-LENARD, D.E. 14), alleging violations of numerous federal constitutional rights and statutes, including the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq. (hereinafter "RLUIPA"). On April 26, 2005, Plaintiff United States of America filed a Complaint against Defendant City of Hollywood (Case No. 05-60687-CIV-LENARD, D.E. 1), requesting declaratory and injunctive relief based upon Defendant's alleged violation of RLUIPA. On June 16, 2005, the Court issued an Order consolidating these cases and administratively closing the higher-numbered case (Case No. 04-61212-CIV-LENARD, D.E. 75; Case No. 05-60687-CIV-LENARD, D.E. 14), finding that they involved common questions of law and fact.

On December 2, 2005, Plaintiff HCS was granted leave to file a Second Amended Complaint. (D.E. 124.) This Second Amended Complaint (D.E. 125) contains 19 counts and

is the operative complaint for purposes of Plaintiff's Motion. Unless otherwise specified, the legal claims and facts that follow are taken from the allegations contained in the Second Amended Complaint in the consolidated case.

Plaintiff HCS is a synagogue with its principal place of business at 2215-2221 N. 46th Avenue, Hollywood, Florida 33021. (D.E. 125, at ¶ 6.) Defendant City of Hollywood is a city municipality authorized by the State of Florida to regulate the use of land and structures within the City's borders, consistent with law. (Id. at ¶7.) Defendant Sal Oliveri is a City Commissioner for the City of Hollywood, representing the area of Hollywood Hills. (Id. at ¶ 8.)

In 1999, Yosef Elul, then-President of the Synagogue, purchased two residences, located at 2215 and 2221 N. 46th Avenue, Hollywood, in a single-family district. (Id. at ¶15.) In such single-family districts, a place of worship[1] may operate only if granted a Special Exception. (Id. at ¶ 19.) After the purchase of the land by Yosef Elul, the Director of Planning for the City of Hollywood advised the Synagogue that it needed to apply for a Special Exception as a place of worship but assured Synagogue representatives that such Special Exception would be granted. (Id. at ¶¶ 19-20.)

In May of 2001, Alan Razla, on behalf of Mr. Elul, applied for a Special Exception as a place of worship. (Id. at ¶ 21.) The Board of Appeal and Adjustments (hereinafter

---

[1] The City's Zoning and Land Development Regulations do not define place of worship, and thus the Court will look to the natural and ordinary meaning. Konikov v. Orange County, Fl. 410 F.3d 1317, 1325 (11th Cir. 2005) A "place" is defined as "a building or locality used for a special purpose" Webster's 3d New Int'l Unabridged Dictionary 1727 (1993) "Worship" is defined as "the reverence or veneration tendered a divine being or supernatural power "Id. at 2637 Thus, taken together, a "place of worship" is a building or locality used for the reverence or veneration of a divine being or supernatural power

"BAA") granted a six-month Special Exception. (Id.) Four months later, in September of 2001, Defendant Oliveri filed an appeal with the City Commission of the BAA's grant of the Special Exception. (Id. at ¶ 22.) The Commission heard the appeal and subsequently granted the Synagogue a one-year Special Exception, which included certain conditions that limited parking and capacity. (Id.) Plaintiff United States notes that, upon information and belief, Defendant City of Hollywood had never previously imposed a time limit on a special exception for a religious use and had only once before imposed a time limit on a special exception for a non-religious use. (Case No. 05-60687-CIV-LENARD, D.E. 1, at ¶ 20.)

In August of 2002, Arthur Eckstein, on behalf of the Synagogue, applied to the Development Review Board (hereinafter "DRB," formerly known as the BAA) for a Special Exception. (D.E. 125, at ¶ 30.) In September of 2002, the DRB granted a six-month Temporary Special Exception subject to certain enumerated conditions and found that, subject to those conditions,[2] the use of the property as a place of worship was compatible with the existing natural environment and other properties within the vicinity. (Id. at ¶¶ 30, 31(A).) After the DRB hearing, Defendant Oliveri filed an appeal with the Commission. (Id. at ¶ 32.) In October 2002, the Commission denied Oliveri's appeal and allowed HCS the six-month Temporary Special Exception. (Id. at ¶ 33.)

In March of 2003, the DRB granted the Synagogue a Permanent Special Exception

---

[2] The conditions imposed by the DRB were: (1) parking of any type is prohibited in the alley located behind the Synagogue; (2) the Synagogue must enter into a lease agreement for off-site parking, (3) the Synagogue must obtain garbage dumpsters in a size and style acceptable to City staff, (4) the Synagogue must enter into a property maintenance agreement with a property maintenance provider who will maintain the premises in accordance with the City Code, and (5) the Synagogue must work with City staff to create a buffer along the rear side of the property. (D.E. 125, at ¶ 30.)

subject to the satisfaction of certain conditions[3] within 180 days. (Id. at ¶ 37.) Defendant
Oliveri filed another appeal. (Id. at ¶ 38.) On June 5, 2003, 53 days after the Permanent
Special Exception was granted, the Commission, after considerable debate, reversed the
decision of the DRB. (Id. at ¶ 39.) Among other things, the Commission claimed that the
Synagogue was "too controversial." (Id. at ¶ 41.) "Controversiality" is not identified by the
City Code as a factor to be evaluated when considering whether to grant a Special Exception.
(Id. at ¶ 44.) Plaintiff United States notes that, upon information and belief, Defendant City
of Hollywood had never previously denied a request by a place of worship to operate in ether
a single-family or multiple-family residential zone. (Case No. 05-60687-CIV-LENARD, D.E.
1, at ¶ 28.)

On October 16, 2003, Defendant City of Hollywood sent HCS a letter notifying the
congregation that it was to cease holding services and other related activities at its current
location within one week. (Case No. 05-60687-CIV-LENARD, D.E. 1, at ¶ 30.) During a
July 7, 2004, meeting, the City Commission voted to direct the City Attorney to file a lawsuit
to stop further organized religious services from taking place at HCS, despite the fact that
this item was not on the agenda and no notice had been provided to HCS or the public that
such a vote would take place. (Case No. 05-60687-CIV-LENARD, D.E. 1, at ¶ 32.) On or
about July 16, 2004, the City filed suit against the Synagogue in Broward County Circuit

_____

[3] The conditions imposed by the DRB require the Synagogue to: (1) build a six-foot soundproofing wall at the rear
property line; (2) provide for appropriate three-sided dumpster as approved by the City's Public Works Department; (3) provide
additional landscaping along the north and south property lines as determined appropriate by the City's Office of Planning; and
(4) provide a site plan to the City's Planning Staff that demonstrates how the Synagogue will satisfy the first three conditions.
(D.E. 125, at ¶ 37.)

Court, Case No. 04-11444 (21), seeking declaratory and injunctive relief against the Synagogue for operating as a place of worship without a Special Exception. (D.E. 125, at ¶ 57.)

In its Second Amended Complaint, Plaintiff HCS alleges the following 18 Counts against the City of Hollywood: I) damages for violation of the Synagogue's right to free exercise of religion; II) injunctive relief for violation of the Synagogue's right to free exercise of religion; IV) damages for violation of RLUIPA (42 U.S.C. § 2000cc(a)(1) - substantial burden); V) injunctive relief for violation of RLUIPA (42 U.S.C. § 2000cc(a)(1) - substantial burden); VI) damages for violation of RLUIPA (42 U.S.C. § 2000cc(b)(1) - unequal terms); VII) injunctive relief for violation of RLUIPA (42 U.S.C. § 2000cc(b)(1) - unequal terms); VIII) damages for violation of RLUIPA (42 U.S.C. § 2000cc(b)(2) - discrimination); IX) injunctive relief for violation of RLUIPA (42 U.S.C. § 2000cc(b)(2) - discrimination); X) damages for violation of the Florida Religious Freedom Restoration Act of 1998 (Florida RFRA); XI) injunctive relief  for violation of the Florida RFRA; XII) damages for violation of the Equal Protection Clause; XIII) injunctive relief for violation of the Equal Protection Clause; XIV) damages for violation of the Substantive Due Process Clause of the Fourteenth Amendment; XV) injunctive relief for violation of the Substantive Due Process Clause of the Fourteenth Amendment; XVI) promissory estoppel; XVII) facial equal protection challenge to Article V of the City of Hollywood Code of Ordinances; XVIII) as applied equal protection challenge to Article V of the City of Hollywood Code of

Ordinances; and XIX) preliminary injunctive relief. (D.E. 125, at ¶¶ 60-151.)

Plaintiff HCS's Second Amended Complaint also asserts two claims against Defendant Sal Oliveri, individually, for damages stemming from the alleged violation of Plaintiff's First and Fourteenth Amendment Rights to Free Exercise of Religion (Count III) and from the alleged violation of Plaintiff's Fourteenth Amendment Right to Equal Protection (Count XII). (Id. at ¶¶ 72-80, 113-121.)

Plaintiff United States' Complaint contains substantially similar facts to Plaintiff HCS's Second Amended Complaint and requests that the Court grant injunctive and declaratory relief against Defendant City of Hollywood for violations of RLUIPA, 42 U.S.C. § 2000cc(b)(1)-(2), based on the City's treatment of HCS on less than equal terms with non-religious assemblies and on discrimination against HCS on the basis of religion or religious denomination. (Case No. 05-60687-CIV-LENARD, D.E. 1, at page 6.)

On May 10, 2006, the Court issued an Order Granting in Part and Denying in Part Defendant City of Hollywood's Motion to Dismiss HCS' Second Amended Complaint. (D.E. 272.) Therein, the Court: 1) dismissed with prejudice those parts of Counts I and II that relate to an alleged City policy of regularly granting applications for Special Exceptions; 2) dismissed Counts IV, V, X, and XI with prejudice; 3) dismissed Count XIX without prejudice; and 4) denied Defendant's Motion with respect to all other Counts. (Id. at 61-62.)

## II.   Plaintiff HCS's Motion for Partial Summary Judgment

In its Motion (D.E. 190), Plaintiff HCS moves for partial summary judgment, arguing

that Article V, Sections 5.3 and 5.7 of the City's Zoning and Land Development Regulations (ZLDR) are unconstitutional on their face and as applied to the Synagogue.[4] (Id. at 2-2.) The Synagogue asserts that this determination does not require any factual findings or review of testimony, but may be made entirely on the basis of the law. (Id. at 13.) First, HCS maintains that Section 5.3.G. of the City's ZLDR is facially void because it gives City officials unbridled and unfettered discretion in their review of Special Exception applications. (Id.) The Synagogue contends that this Section contains four subjective criteria to be applied in reviewing an application for a Special Exception and that, even if the City Commission finds that all four criteria have been met, it still has the discretion to deny the application. (Id. at 5-6.)

Second, the Synagogue argues that Section 5.3.G.1. constitutes a prior restraint on activities protected by the First Amendment and is unconstitutional on its face and as applied to HCS. (Id. at 3, 16.) HCS maintains that, although prior restraints must contain standards that are precise, definite, and objective in order to guide government officials, the City's Special Exception zoning criteria employ terms such as "compatibility," "vicinity," "adequate provision," and "sufficient, appropriate, and adequate" that are vague, subjective, and imprecise. (Id. at 8.) Thus, HCS argues that the Special Exception provisions threaten the right to free exercise of religion. (Id. at 16.)

In its Response (D.E. 243), Defendant City of Hollywood argues that the amount of

---

[4] Though Plaintiff never specifies as to which Counts its Motion relates, the Court finds that the Motion is dispositive of Counts XVII and XVIII and also affects portions of Counts I and II.

-8-

discretion afforded a zoning board in determining particular land uses is extremely high because zoning is an inherently discretionary system. (Id. at 2.) The City thus maintains that Plaintiff has not established grounds for summary judgment on its facial or as-applied challenges. (Id.) Defendant agrees that the adjudication of this Motion does not require the Court to make factual determinations or consider testimony regarding witnesses' interpretations of the ZLDR sections at issue. (Id. at 13.)

Defendant City of Hollywood contends that Section 5.3G.2. is not facially void for "unbridled discretion" because the DRB or Commission, after reviewing an application for a Special Exception, has only three options: it may grant the application, grant the application with conditions, or deny the application. (Id. at 5.) Defendant further argues that the four criteria used to evaluate such applications require specific findings. (Id. at 8.) Moreover, Defendant maintains that Section 5.3.G. of the ZLDR should be reviewed in light of the purpose of the zoning district in question, i.e., in light of the section's purpose of protecting the character of single-family neighborhoods. (Id. at 6.)

Defendant also argues that Plaintiff's as-applied challenge is without merit because the zoning ordinances in question do not operate as a prior restraint on Plaintiff's First Amendment rights. (Id. at 15.) Defendant asserts that the ZLDR neither directly regulates the content of Plaintiff's protected activity nor operates as a licensing scheme and, thus, the zoning scheme should be reviewed under the more permissive standard of time, place, and manner restrictions for content-neutral regulations. (Id. at 15-16, 18.) Defendant then

maintains that, because the ordinances are narrowly tailored to the City's substantial interest in preserving the quality of urban life and because the ordinances leave Plaintiff significant alternative avenues of expression, Plaintiff's Motion should be denied. (Id. at 19-20.)

In its Reply (D.E. 260), Plaintiff reiterates that the zoning scheme provides Defendant City of Hollywood unbridled discretion to grant or deny a Special Exception permit, even if all four criteria are met, and that it makes no difference that the City must make some kind of decision on every application. (Id. at 2-3.) Plaintiff further maintains that the Special Exception procedure constitutes a prior restraint on the exercise of First Amendment activity because applicants must obtain a permit before operating in certain parts of the City. (Id. at 4.) Thus, there exists a heavy presumption against the constitutional validity of the procedure, one that may only be overcome by narrow, objective, and definite standards, standards that are absent here. (Id.) Morcover, argues Plaintiff, this infirmity is not cured by the fact that Defendant provides alternate fora for the exercise of First Amendment activity. (Id. at 7.) Instead, Plaintiff argues that the prior restraint analysis is triggered by the existence of official discretion to deny use of a given forum for First Amendment protected activity. (Id. at 8.) Finally, Plaintiff asserts that, even if the Court was to construe Section 5.3.G. of the ZLDR as a content-neutral time, place and manner restriction, the Section is still unconstitutional because it does not contain precise and objective standards to guide the City's decisionmaking. (Id. at 10.)

In its Supplement (D.E. 301), Defendant argues that, in the event that the Court

determines that the standards governing the Special Exception procedure are invalid, a conditional use "becomes a prohibited one since the obvious reason for making it a special exception use is to prohibit it in the absence of the specified approval." (Id. at 2-3.) Since the terms would then be considered too indefinite, the City argues that Board would be unable to grant a Special Exception to the Synagogue and thus, even if the Plaintiff's motion for partial summary judgment is granted, the Court cannot order that HCS be granted a Special Exception. (See id. at 2-3.)

In the Response to the Supplement (D.E. 319), the Synagogue argues that Defendant's position is lacking in legal support and represents a "disturbing tactic" on the part of the City. (Id. at 2.) First, Plaintiff argues that the authorities relied upon by the City are factually distinguishable because they do not concern the First Amendment. (Id.) Next, Plaintiff argues that, if the Special Exception provisions are declared unconstitutional, the proper remedy is to allow the Synagogue to remain in its present location. (See id. at 3, 7-8.) In support of this argument, Plaintiff states that other provisions of the Code consider special exception uses, including places of worship, as generally suitable in single-family neighborhoods. (Id. at 7.)

### III.   The Hearing

On May 23, 2006, the Court held a hearing ("the Hearing," see D.E. 298), at which the Parties were provided an opportunity to present their arguments on the. During the Hearing, Plaintiff HCS emphasized its position that the zoning ordinances in question

constituted a prior restraint on protected First Amendment activity and, as such, the ordinances are required to contain clear and precise standards. (Id. at 3:1-12.) Plaintiff further argued the standards currently in place allow the Commission to use their unfettered discretion and to base their decisions on any criteria they choose, including "controversiality," as was cited as a basis for rejecting the Synagogue's application. (Id. at 4:2-6.) Plaintiff noted that, even though the City code states that a place of worship is, "generally suitable in this district," the Synagogue was denied a Special Exception because it was purportedly not compatible with its surroundings. (Id. at 5:21-6:6.) Thus, HCS maintained that, because it is impossible to know what criteria need to be met to obtain a Special Exception, the provisions are unconstitutionally vague. (Id. at 5:11-19; 12:6-17.)

Defendant City of Hollywood responded that no prior restraint can be found here. (Id. at 14:7.) Defendant defined a prior restraint as a governmental attempt to control the content of expression and further asserted that the City's zoning ordinances are not prior restraints because they do not require every place of worship in all zoning districts to get permission before operating. (Id. at 15:3-8, 16:18-17:2.) Because a place of worship need apply for a permit only if it wants to operate in residential neighborhoods, the City contended that there was no licensing scheme or prior restraint. (Id. at 17:9-16.) Instead, Defendant argued that its zoning regulations were narrowly tailored to the substantial government interest of zoning and preserving the quality of urban life. (Id. at 20:8-18.) Thus, the City asserted that its regulations were governed by the permissive time, place, and manner restriction standards,

and that this only mandated that decisions not be left up to the whim of the decisionmaker. (Id. at 23:8-24:3.) The City argued that, while its standards allow some elasticity, they do not leave the decision to the whim of the decisionmaker. (Id. at 24:20-23.)

Plaintiff responded that the City established a system in which places of worship were deemed generally acceptable subject to a Special Exception, but provided unlimited discretion to officials to decide whether to grant such an Exception. (Id. at 32:15-33:8.)

Upon questioning by the Court, the City stipulated that the substantial government interest justifying the zoning ordinances in question is twofold: the City's interest in zoning, generally, and the purpose of protecting the character of single-family neighborhoods, as stated in ZLDR § 4.1A. (Id. at 39:23-40:2.) The City argued that the provisions were narrowly tailored because they applied only to places of worship wanting to operate in residential districts. (Id. at 42:14-25.) Defendant further maintained that the zoning ordinances do not constitute a prior restraint because there are places in the City of Hollywood where the Synagogue can practice their First Amendment protected activities without having to ask the City for permission or a Special Exception. (Id. at 41:2-22.) Finally, Defendant City conceded that, if the Court found the zoning ordinances at issue to constitute a prior restraint, the holding of Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358 (11th Cir. 1999), would control in this case. (Id. at 58:14-59:3.)

IV.    **Analysis**

    A.    **Standard of Review**

-13-

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S.317, 322-23 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324; see also FED.R.CIV.P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio corp., 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Id. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

Plaintiff HCS and Defendant City of Hollywood agree that the Court need not make any factual findings or examine any testimony in considering the instant motion and that the Court may issue its ruling after reviewing the text of the challenged portions of the zoning regulations in light of the applicable legal standards. After reviewing the record, the Court agrees that no genuine issue exists for trial and that partial summary judgment may be granted as a matter of law. Accordingly, the Court will now turn to the text of the City's ZLDR in question.

**B.     The City's Zoning and Land Development Regulations (ZLDR)**

Hollywood Community Synagogue is located in a "Single Family District" in the City

of Hollywood. Section 4.1 of the ZLDR specifies that the purpose of Single Family Districts is "to protect the character of the single family neighborhoods." (D.E. 191, Ex. B at 4.1.) The "Main Permitted Uses" in such districts are "[s]ingle family detached dwelling[s]." (Id.) The "Special Exceptions" in such districts are "[e]ducational facilities[,] [p]laces of worship, meeting halls and similar nonprofit uses and ham radio antennas." (Id.)

Section 5.3.G. of the ZLDR, entitled "Special exceptions," is the primary provision at issue and contains the following language:

> Certain uses are listed as special exceptions in the Zoning and Land Development Regulations and are permitted in zoning districts subject to the approval of the Development Review Board. These uses are considered generally suitable for the districts in which listed. However, the character and nature of the uses may necessitate controls and safeguards on the manner of establishment and operation which would best serve the interests of the community and the owners of the property in question.

(D.E. 191, Ex. A at 5.3.G.) Section 5.3.G.1., entitled "Review of petitions for special exceptions," provides that all petitions for Special Exceptions shall be reviewed by the DRB, which may grant the petition if it makes all of the following findings:

   a.   That the use is compatible with the existing natural environment and other properties within the vicinity;
   b.   That there will be adequate provision for safe traffic movement, both vehicular and pedestrian, both internal to the use and in the area which will serve the use;
   c.   That there are adequate setbacks, buffering, and general amenities in order to control any adverse effects of noise, light, dust and other potential nuisances; and
   d.   That the land area is sufficient, appropriate and adequate for the use as proposed.

-16-

(Id. at A at 5.3.G.1(a)-(d).) The ensuing section, entitled "Decision of the Board," provides:

> In considering a petition for a special exception, the Board may grant the special exception, grant the special exception with appropriate conditions when the Board determines such conditions... are necessary to further the purpose of the zoning district or compatibility with other property within the vicinity, or deny the special exception.

(Id. at A at 5.3.G.2.) Finally, pursuant to Section 5.7.A., the City Commission may request a hearing on any application which, upon its determination, requires additional review to ensure that, inter alia, development standards and criteria have been met. (D.E. 125, at ¶ 138.[5]) Section 5.7.B. provides the Commission shall apply the same standards and criteria employed by the DRB and shall approve, approve with conditions, or deny the application. (D.E. 125, at ¶ 138; Hearing Transcript at 24:20-23, 28:1-12.)

### C.    Plaintiff's Facial and As-Applied Challenges

Plaintiff first raises a facial challenge to the City's zoning scheme.  Generally, content-neutral zoning regulations are reviewed under the deferential "time, place, and manner" standards that were delineated by the Supreme Court in City of Renton v. Playtime, Theatres, Inc., 475 U.S. 41, 50-54 (1986).  Under these standards, "a zoning ordinance is valid if it is narrowly tailored to serve a substantial government interest and [if] it allows for reasonable alternative avenues of expression." Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358 (citing Int'l Eateries of America, Inc. v. Broward County, Fla., 941 F.2d 1157,

---

[5] Plaintiff provided the text of Section 5.7 of the ZLDR in the Second Amended Complaint (D.E. 125, at § 138); Defendant City of Hollywood, in its Answer, admitted to the contents of this paragraph of the pleading (D.E. 307, at ¶ 138).

1161-65 (11th Cir. 1991) and City of Renton, 475 U.S. at 50-52.)  A city's interest "in attempting to preserve the quality of urban life" is a substantial government interest that "must be accorded high respect." City of Renton, 475 U.S. at 50.

A zoning ordinance that touches upon activities protected by the First Amendment must also contain "narrow, objective, and definite standards" to guide city officials in their review. See CAMP Legal Defense Fund, Inc. v. City of Atlanta, ___ F.3d ___, 2006 WL 1623279 at *19 (11th Cir., June 13, 2006) (citing Shuttlesworth v. City of Birmingham, 394 U.S. 147, 151 (1969)).  Absent such standards, the ordinance grants "unbridled discretion" to city officials and fails to "'prevent[] the official from encouraging some views and discouraging others through the arbitrary' grant of an exemption."[6] CAMP, 2006 WL 1623279 at *19 (quoting Forsyth County v. Nationalist Movement, 505 U.S. 123, 133 (1992)); see also Thornhill v. State of Alabama, 310 U.S. 88, 97-98 (1940) (stating that the lack of objective criteria "readily lends itself to harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure"). "A government regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." Id. (internal citations omitted).

Out of these concerns regarding the dangers of censorship, the Supreme Court has developed a long line of jurisprudence aimed at fostering the legitimate goals of lawmaking

---

[6] The Court notes that a facial challenge to a zoning ordinance may be raised when the mere threat of abuse of power exists; no proof of actual abuse of power is required. Thornhill v. State of Alabama, 310 U.S. 88, 97 (1940).

while curbing the threats of arbitrary enforcement.  Yet, in reaching the proper balance, the Supreme Court has consistently emphasized that an ordinance that "makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official – as by requiring a permit or license which may be granted or withheld in the discretion of such official – is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." Shuttlesworth, 394 U.S. at 151.

A "prior restraint" is a restriction on expression that is imposed before the expression occurs. United States v. Frandsen, 212 F.3d 1231, 1236-37 (11th Cir. 2000); see also Ward v. Rock Against Racism, 491 U.S. 781, 795 n.5 (1989); CAMP, 2006 WL 1623279 at *24 ("[t]he term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications occur (citing Alexander v. United States, 509 U.S. 544, 553 (1993) (internal quotations omitted))). "Classic prior restraints have involved judge-issued injunctions against the publication of certain information." Cooper v. Dillon, 403 F.3d 1208, 1215 (11th Cir. 2005). "Prior restraints have also been found where the government has unbridled discretion to limit access to a particular public forum." Id.

Defendant City of Hollywood first argues that, because places of worship can operate in other districts in the City without applying for a special exception, no prior restraint exists here. The Court finds that this assertion is in direct conflict with established Supreme Court precedent.  In Schneider v. State of New Jersey, 308 U.S. 147, 163 (1939), the Supreme

Court rejected the argument that anti-canvassing ordinances, which restricted canvassing only in streets and alleys, were valid because they did not prohibit the distribution of printed matter in other public places. The Schneider Court found that streets were the natural and proper places for dissemination of information and that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." Id. at 163. Further, in Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 555 (1975), the Supreme Court found that a decision to deny the petitioner's request to use a municipal facility for a theater production constituted a prior restraint, even though the denial did not prevent petitioner from using another theater in the city. Accordingly, the existence of alternative fora for expression does not justify an otherwise impermissible prior restraint. Id. at 555.

Next, Defendant contends that Section 5.3.G. of the ZLDR sufficiently restricts the discretion of City regulators and is therefore a valid time, place, and manner restriction. After careful consideration of this ordinance, the Court cannot agree. Instead, the Court finds that Section 5.3.G.1. constitutes an unconstitutional[7] prior restraint because it lacks "narrow, objective, and definite standards" to guide city officials in their review of applications for a Special Exception and thus provides City officials unbridled discretion in their consideration of the application. See Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1362

_____

[7] Though prior restraints are not per se unconstitutional, there exists a strong presumption against their constitutionality. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225 (1990). Any scheme that places unbridled discretion in the hands of a government official or agency, however, must be invalidated due to the great danger of censorship and of abridgment of our precious First Amendment freedoms. Id.; Southeastern Promotions, 420 U.S. at 1244.

(11th Cir. 1999) (noting that "some measure of discretion is acceptable, but ... virtually any amount of discretion beyond the merely ministerial is suspect").

In Lady J. Lingerie, the Eleventh Circuit Court of Appeals considered and invalidated a similar licencing scheme. 176 F.3d at 1362. There, the City of Jacksonville created a zoning scheme that allowed adult entertainment establishments to operate as of right in only one zone; such establishments were allowed to operate in a second zone only if the zoning board granted a zoning exception after consideration of nine enumerated criteria.[8] Id. at 1361. The Eleventh Circuit characterized these criteria as "run-of-the-mill zoning

---

[8] The relevant provision of the City of Jacksonville regulations provided that the zoning board

    shall issue an order to grant the exception on if it finds from a preponderance of the evidence...that the proposed use meets, to the extent applicable, the following standards and criteria:

    (i)    Will be consistent with the Comprehensive Plan, including any subsequent plan adopted by the Council pursuant thereto;

    (ii)    Will be compatible with the existing contiguous uses or zoning and compatible with the general character of the area, considering population density, design, scale and orientation of structures to the area, property values, and existing similar uses or zoning;

    (iii)    Will not have an environmental impact inconsistent with the health, safety and welfare of the community;

    (iv)    Will not have a detrimental effect on vehicular or pedestrian traffic, or parking conditions, and will not result in the generation or creation of traffic inconsistent with the health, safety and welfare of the community;

    (v)    Will not have a detrimental effect on the future development of contiguous properties or the general area, according to the Comprehensive Plan, including any subsequent amendment to the plan adopted by the Council;

    (vi)    Will not result in the creation of objectionable or excessive noise, lights, vibrations, fumes, odors, dust or physical activities, taking into account existing uses or zoning in the vicinity;

    (vii)    Will not overburden existing public services and facilities;

    (viii)    Will be sufficiently accessible to permit entry onto the property by fire, police, rescue and other services; and

    (ix)    Will be consistent with the definition of a zoning exception, and will meet the standards and criteria of the zoning classification in which such use is proposed to be located, and all other requirements for such particular use set forth elsewhere in the Zoning Code, or otherwise adopted by the Planning Commission.

Lady J. Lingerie, 176 F.3d at 1369-70.

-21-

considerations" that concerned compatibility with contiguous uses, environmental impact, and effect of pedestrian traffic. <u>Id.</u> at 1362. After examining these factors, the Eleventh Circuit held that none was precise or objective and that "all of them – individually and collectively – empower the zoning board to covertly discriminate against adult entertainment establishments under the guise of general 'compatibility' or 'environmental' considerations." <u>Id.</u> Specifically, in place of objective requirements, <u>e.g.</u>, there must be X number of doors per square foot, the provisions used broad, subjective language, such as buildings must "be sufficiently accessible to permit entry by" rescue services. <u>Id.</u> Because these criteria were being applied to establishments that are entitled to First Amendment protections, the Eleventh Circuit held that the licensing scheme was unconstitutional.

The criteria contained in Section 5.3.G.1. are as, if not more, broad and imprecise as those found in <u>Lady J. Lingerie</u>. The Section directs the DRB to determine whether the use is "compatible with" the natural environment and other properties; whether there will be "adequate provision" for safe traffic movement or "adequate setbacks, buffering, and general amenities...to control...potential nuisances"; and whether the land area is "sufficient, appropriate, and adequate for the use." (D.E. 191, Ex. A at 5.3.G.1.) As in <u>Lady J. Lingerie</u>, the Court finds that none of these criteria is "precise and objective" and that all of them empower the DRB, or the Commission on appeal, to covertly discriminate against places of worship under the guise of "compatibility" or other intangible considerations. <u>Lady J. Lingerie</u>, 176 F.3d at 1362. Moreover, the Special Exception procedure employed here is

-22-

even more constitutionally invidious, as it provides City officials the discretion to deny a Special Exception even if all four enumerated criteria are met. (D.E. 191, Ex. A at 5.3.G.) Nothing in the ordinance or its application prevents City officials from encouraging some places of worship while discouraging others through the arbitrary grant or denial of a Special Exception. See Forsyth County v. Nationalist Movement, 505 U.S. 123, 133 (1992). Because Plaintiff HCS, as a place of worship, is entitled to the protections of the Free Exercise clause of the First Amendment, the provision of such unbridled discretion to City officials is constitutionally impermissible.[9]

Accordingly, for the reasons stated above, the Court finds that the zoning scheme established in Section 5.3.G., as it relates to places of worship, is void on its face, and summary judgment is therefore **GRANTED** in favor of Plaintiff HCS on Count XVII of the Second Amended Complaint.

Last, because the Court has found the City's zoning scheme unconstitutional, it does not reach Plaintiff's argument that the provisions are also unconstitutional as applied to HCS. See Café Erotica of Florida, Inc. v. St. Johns County, 360 F.3d 1274, 1293 (11th Cir. 2004); Weaver v. Bonner, 309 F.3d 1312, 1318 n.9 (11th Cir. 2002) (finding that an as-applied

---

[9] The Court notes that, even if it found that the City of Hollywood's zoning scheme constituted a content-neutral time, place and manner restriction instead of a prior restraint, the City's Special Exception standards as applied to places of worship do not pass constitutional muster. The Supreme Court has held that even time, place, and manner restrictions must contain adequate standards to guide officials' discretion and allow for effective judicial review in the First Amendment context. Thomas v. Chicago Park District, 534 U S 316, 323 (2002). Therefore, such regulations must contain "narrowly drawn, reasonable and definite standards." Burk v. Augusta-Richmond County, 365 F.3d 1247, 1256 (11th Cir. 2004), quoting Thomas, 534 U.S. at 324. As discussed above, the standards provided for the DRB to review Special Exception applications contain vague and imprecise language allowing for wide variances in interpretation and application. This infirmity is only exacerbated by the fact that both the DRB and Commission retain the discretion to deny a Special Exception application, even if a place of worship is found to satisfy all four criteria. Therefore, the Court finds that the City's zoning regulations relating to places of worship are unconstitutional, even if construed as content-neutral time, place, and manner restrictions.

challenge is rendered moot if the underlying statute is deemed unconstitutional). Therefore, Plaintiff's as-applied equal protection claim, contained in Count XVIII of the Second Amended Complaint, is **DENIED as moot.**

### D.    Impact on Counts I and II

In Counts I and II of the Second Amended Complaint, Plaintiff HCS seeks damages and injunctive relief, respectively, as a result of the City's violation of HCS's First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. In these counts, the Synagogue alleges, inter alia, that the City's denial of the Special Exception violated the Synagogue's constitutional rights to free exercise of religion and freedom of assembly for purposes of worship and teaching. (D.E. 125, at 19.)

In order to obtain relief under Section 1983, Plaintiff must demonstrate that conduct under color of state law, complained of in the civil rights suit, violated its rights, privileges, or immunities under the Constitution or laws of the United States. Whitehorn v. Harrelson, 758 F.2d 1416, 1419 (11th Cir. 1985). Moreover, the Supreme Court has placed strict limitations on municipal liability under Section 1983. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998), citing Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978). There is no respondeat superior liability upon which to inculpate a municipality for the wrongful actions of its employees or agents. Monell, 436 U.S. at 691, 694. Thus, a municipality can only be held liable if an official policy or custom of that municipality causes a constitutional violation. Id. at 694-95. Moreover, it is not enough for the plaintiff to

merely identify conduct properly attributable to the municipality; the plaintiff must also demonstrate that, through deliberate conduct, the municipality is the moving force behind the alleged injury. Board of County Com'rs v. Brown, 520 U.S. 397, 404 (1997).

The Supreme Court in Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), held that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. Id. at 480.  However, any such single act must still be made pursuant to an existing, unconstitutional official municipal policy to properly attribute such conduct to the municipality pursuant to Monell. Id. at 478 n. 6, 479-81; City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985).  The Eleventh Circuit has summarized the Supreme Court's guiding principles, to be employed when evaluating the single action of an official policymaker is sufficient to give rise to municipal liability, as follows: (1) whether the action is officially sanctioned or ordered by the municipality; (2) whether the action is taken by officers with final policymaking authority; (3) whether this final policymaking authority is granted by state law, including valid local ordinances and regulations; (4) whether the challenged action was taken pursuant to a policy adopted by the officials responsible for making policy in that particular area of the city's business, as determined by state law. Martinez v. City of Opa-Locka, 971 F.2d 708, 713 (11th Cir. 1992) (citations and quotation marks omitted).  In its Order of May 10, 2006, the Court ruled that Plaintiff had demonstrated all four factors from Martinez, and had thus stated a claim for relief under 42 U.S.C. § 1983 based upon the single act by the Commission of reversing the DRB pursuant

-25-

to the City's zoning ordinances. (D.E. 272, at 31-32.)

The Court has determined herein that the City's zoning ordinance relating to Special Exceptions for places of worship is unconstitutionally vague on its face in violation of Plaintiff HCS's First Amendment right to free exercise of religion. It is undisputed that the City applied this zoning ordinance to the Synagogue in denying its application for a Special Exception. The Court has, moreover, already determined that this single act of denying HCS's application constituted a municipal policy or practice sufficient to invoke municipal liability. The Court further finds that this denial pursuant to an unconstitutional ordinance was the moving force behind the violation of Plaintiff's constitutional rights. Finding no genuine issues of material fact as to this claim, the Court concludes that Plaintiff HCS is entitled to summary judgment as to the portions of Counts I and II in which Plaintiff claims that the City violated its constitutional rights through the single act of the Commission's denial of a Special Exception.

### E.    Remedy

In Counts I, II, XVII, and XVIII, the Synagogue requests, inter alia, that the Court enter judgment against the City, direct that it be granted a Special Exception, award damages to the Synagogue, and declare the portions of Article V of the City of Hollywood Code of Ordinances relating to Special Exceptions unconstitutionally vague. (D.E. 125 at ¶¶ 69, 71, 141.)

The City, in its Supplement, argues that it may still prevent the Synagogue from

operating as a place of worship in its present location even if the Special Exception procedures are deemed unconstitutional. Essentially, the City maintains that if the Special Exception provisions are excised from the ZLDR, no special exceptions could be granted in single-family districts and the only the permitted principals uses would be allowed.

The primary issue now before the Court is whether the City's Special Exception provision may be severed from the rest of the ZLDR and what impact such severance would have on places of worship. The City is correct that severability of local ordinances is a question of state law. City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 772 (1988); Mayflower Farms, Inc. v. Ten Eyck, 297 U.S. 266, 274 (1936). However, the Florida District Court of Appeals cases provided by the City provide no support for its conclusion that, in the First Amendment context, the invalidation of the Special Exception provisions transform all conditional uses into prohibited uses.

The Eleventh Circuit has held that Florida law clearly favors the severance of invalid portions of a law from the valid ones, where possible. Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1347 (11th Cir. 2004). The doctrine of severability is derived from the doctrine of separation of powers and is designed to show great deference to the legislative prerogative to enact laws. Id. However, severability is not possible where an illegal provision has tainted the remainder of the statute. Id. The severability determination is made by examining the invalidated section's "relation to the overall legislative intent of the statute of which it is a part, and whether the statute, less the invalid

-27-

provisions, can still accomplish this intent." Id. (citations omitted).

The Florida Supreme Court, in Smith v. Department of Insurance, 507 So.2d 1080, 1089 (Fla. 1987), has suggested the following test for discerning severability:

> When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other, and (4) an act complete in itself remains after the invalid provisions are stricken.

Coral Springs, 371 F.3d at 1348 (citations omitted). Thus, the Eleventh Circuit concluded that, under Florida law, an unconstitutional portion of a challenged statute "should be excised, leaving the rest intact and in force, when doing so does not defeat the purpose of the statute and leaves in place a law that is complete." Id.

While, in this case, factors (1) and (4) of the Smith test have been met, as the challenged portions of the ZLDR could be separated from the remaining provisions and leave an act complete in itself, the City's proposed remedy fails to satisfy the other two factors. Instead, the Court finds that such severance would thwart the legislative purpose of the ZLDR such that it could not be said that the Commission would have passed the one without the other. The ZLDR expressly states that places of worship are considered "generally suitable" uses within single family districts subject to controls to best serve the interests of the community and the owners of the property in question. (D.E. 191, at Ex. A at 5.3.G.; id.

at Ex. B at 4.1.) Thus, the City never intended the complete exclusion of places of worship in single family districts and would have been unlikely to enact an ordinance devoid of exception procedures. Removal of the Special Exception provision, therefore, cannot be accomplished without defeating the purpose of the statute and destroying the intent of the enacting body.

Accordingly, pursuant to the Court's authority to fashion a remedy for the City's violation of Plaintiff HCS's right to free exercise of religion and because the Court finds that Plaintiff HCS has been irreparably injured by the violation of its rights, the Court orders that the Synagogue shall be granted the Permanent Special Exception it was awarded by the DRB in March 2003, subject only to those conditions that are objective and definite.[10] Specifically, the Permanent Special Exception shall be conditioned upon the Synagogue building a six-foot soundproofing wall at the rear property line and providing a three-sided dumpster as approved by the City's Public Works department, provided that a list of approved dumpsters exists.[11]

Further, the Court orders that the City shall promptly enact new Special Exception ordinance(s) for places of worship, one(s) that contain "narrow, objective, and definite standards" guiding City officials in their review and that are otherwise constitutionally sound.

---

[10] The Court notes that, at a hearing held on June 26, 2006, the Parties announced that, as a part of the proposed settlement, the City would allow the Synagogue, inter alia, to operate as a "matter of right" in its present location. The Court's ruling, contained in this Order, shall not preclude the Parties from agreeing to terms that are more favorable to the Synagogue, provided that such terms are consistent with all applicable laws.

[11] The Court finds that the remaining conditions – requiring "additional" landscaping "as determined appropriate" and providing a site plan – are insufficiently objective to be imposed.

Last, the Court orders that the issue of damages that arise from Count I and that relate to the constitutional violation found here is properly placed before a jury for further determination.

### III.   Conclusion

As stated above, the Court recognizes that the City of Hollywood has a substantial interest in preserving the quality of urban life in its neighborhoods. Moreover, the Court accords great respect for the City's interest in protecting the character and nature of neighborhoods in which single-family, detached dwellings predominate and in furthering the ability of its residents to engage in the quiet and peaceful enjoyment of their property.

However, the City of Hollywood, through its officials, is also charged with the protection of the religious freedoms that are found in the First Amendment and that form the cornerstone of American democracy. Zoning regulations that affect those freedoms must therefore be precise and objective in both their terms and their application. Our Constitution and our love of liberty demand no less.

Accordingly, it is:

**ORDERED AND ADJUDGED** that Plaintiff Hollywood Community Synagogue's Motion for Partial Summary Judgment (D.E. 190), filed March 21, 2006, is **GRANTED in part and DENIED as moot in part** as described herein.

-30-

**DONE AND ORDERED** in Chambers at Miami, Florida, this ___2 4___ day of

June, 2006.

_Joan A. Lenard_
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**


cc:    U.S. Magistrate Judge Theodore Klein

       All Counsel of Record

       **Case No.04-61212-CIV-LENARD/KLEIN**


-31-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.04-61212/05-60687 (Lenard/Klein)

United States                              )
                                           )
                    Plaintiff,             )
                                           )            (CONSOLIDATED)
        vs.                                )
                                           )
City of Hollywood                          )
                                           )
                    Defendant.             )
_____    )

Case No.04-61212 (Lenard/Klein)

Hollywood Community                        )
Synagogue, Inc.,                           )
                                           )
                    Plaintiff,             )
                                           )
        vs.                                )
                                           )
City of Hollywood, et al.,                 )
                                           )
                    Defendants.            )
_____    )

## CONSENT ORDER

## I. INTRODUCTION

A.    **Background**

1.    This consent decree is entered between the United States ("Plaintiff") and Defendant City of Hollywood ("the City" or "Defendant").

2.    This action is brought by the United States to enforce provisions of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq.

EXHIBIT
2

Specifically, the United States alleges that the Defendant City of Hollywood has:
(a) treated the Hollywood Community Synagogue ("HCS") on less than equal terms with
nonreligious institutions and assemblies in violation of Section 2(b)(1) of RLUIPA; and
(b) discriminated against HCS on the basis of religion or religious denomination, in
violation of Section 2(b)(2) of RLUIPA, by denying HCS a permanent special exception
to operate a house of worship on the real property located at 2215 and 2221 North 46th
Avenue, Hollywood, Florida.  The City filed an answer denying the United States'
allegations.

3.     HCS is currently located at 2215 and 2221 North 46th Avenue, one block south of
       Sheridan Street in Hollywood, Florida.  Both of these properties are located in a single-
       family residential district.  HCS holds prayer services every morning and evening at 2215
       North 46th Avenue.

4.     Each prayer service described in paragraph 3, above, requires the presence of a <u>minyan</u>, or
       a quorum of ten males over the age of thirteen.  Approximately twenty to thirty
       individuals attend the Friday and Saturday evening services.  Approximately fifty to sixty
       individuals attend the Saturday morning service.

5.     Defendant's Zoning and Land Use Regulations provide that a house of worship may not
       operate in an area zoned for residential use without a special exception.

6.     In or around February 2001, Defendant informed HCS that it would have to obtain a
       special exception if it wished to operate a house of worship at 2215 and 2221 North 46th
       Avenue.

7.   On May 10, 2001, the City of Hollywood Board of Adjustment and Appeals ("BAA")
     granted HCS a conditional special exception.  In granting the special exception, the BAA
     found that HCS's special-exception application satisfied the City's criteria for the granting
     of a special exception.

8.   On May 21, 2001, City Commissioner Sal Oliveri appealed the BAA's decision.  The City
     Commission heard the appeal on September 12, 2001.

9.   After a meeting that lasted through the night, the City Commission granted HCS a limited
     special exception on September 13, 2001.  The limited special exception included
     numerous conditions, including a one-year time limit, a maximum of six parking spaces
     on the property, and a statement that the special exception would be revoked if a Special
     Master found a violation of any provision of a City Ordinance if the violation were not
     cured within 60 days.

10.  HCS applied for a second special exception on August 1, 2002.  The application
     requested that its earlier special exception be "renewed.".

11.  On September 12, 2002, the City of Hollywood Development and Review Board
     ("DRB"), a successor body to the BAA, approved HCS's "renewed" special-exception
     application with conditions.

12.  City Commissioner Oliveri again appealed the DRB's decision to the City Commission.
     The City Commission conducted a hearing on Commissioner Oliveri's request for review
     on October 16, 2002.  After a hearing, the City Commission denied the request for
     review.

13.   HCS applied for a third special exception on February 10, 2003, asking that its special exception be renewed or made permanent.

14.   On March 13, 2003, the DRB heard HCS's request for a third special exception. The DRB granted the special exception and imposed several conditions relating to, among other things, parking and construction.

15.   On March 17, 2003, Commissioner Oliveri filed a request for review of the DRB decision. The City Commission granted the request for review.

16.   On June 4, 2003, the City Commission heard HCS's third application for a special exception. After a public hearing, the Commission reversed the DRB's decision and denied HCS's petition for a third special exception.

17.   Defendant had never previously denied a request by a place of worship to operate in either a single-family or multiple-family residential zone until it denied HCS's special exception application.

18.   Defendant currently permits other religious and nonreligious assemblies and institutions to operate in residential districts.

19.   On October 16, 2003, Defendant sent HCS a letter notifying the congregation that it "must desist holding services and other related activities" at 2215 and 2221 North 46th Avenue as of October 20, 2003.

20.   On July 7, 2004 the City Commission directed the City Attorney to file a lawsuit to stop further organized religious services from taking place at 2215 and 2221 North 46th Avenue.

21.  The United States and the City (together "the Parties") agree that the City is a "government," and that HCS is a "religious assembly or institution" within the meaning of RLUIPA.  42 U.S.C. §§ 2000cc(2)(b)(1), cc-5(4)(A)(i).  The Parties further agree that HCS's use of the property located at 2215 and 2221 North 46th Avenue as a house of worship constitutes "religious exercise," id. at § 2000cc-5(7)(A)-(B), and that the Defendant's processes and requirements regarding the grant or denial of a special exception constitute "land use regulation[s]."  Id. at § 2000cc-5(5).

22.  The parties further agree that the City's denial of the HCS's special exception application constitutes an "individualized assessment" undertaken in a system of "land use regulations."  Id. at § 2000cc(a)(2)(C); id. at § 2000cc-5(5).

23.  The parties further agree that the City of Hollywood has authority under Florida state law and the City of Hollywood Code to regulate and restrict the use of certain land and structures within City of Hollywood's borders, including the authority to grant the special exception sought by HCS.

**B.  Consent of the Parties to Entry of This Order**

24.  The Parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1345 and 42 U.S.C. § 2000cc-2. The Parties further agree that the controversy should be resolved without further proceedings or an evidentiary hearing.

25.  As indicated by the signatures below, all parties agree to the entry of this Consent Order.

Therefore, it is hereby **ORDERED, ADJUDGED and DECREED**:

## II. GENERAL INJUNCTION

26. For the term of this Order, Defendant shall not:

    a. Impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution;

    b. Impose or implement a land use regulation in a manner that discriminates against any assembly or institution on the basis of religion or religious denomination;

    c. Otherwise engage in any conduct that violates RLUIPA; or

    d. Coerce, intimidate, threaten, interfere with or retaliate against any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by RLUIPA.

## III. SPECIAL EXCEPTION APPLICATION PROCESS

27. The Commission may adopt new special exception procedures governing land-use applications for residential zones or for houses of worship and other similar uses. Those procedures must comply with the United States Constitution and with RLUIPA. Within 15 days after the City adopts such procedures, it shall provide a copy of those procedures to the Department of Justice. If the City adopts new special exception procedures, among the new procedures will be the following:

a.   Special Exception Application or Inquiry. Upon receipt of an application or
     inquiry about the special-exception application process, the Planning Division
     shall provide to the applicant or the person inquiring about the application process
     a document that describes the application process and the criteria under which the
     Planning Division will accept, and the City will decide the application. The
     Planning Division will provide to the applicant or the person inquiring a form
     describing an applicant's rights under RLUIPA. The language of the form shall
     conform to Appendix A.

b.   Planning Division Report. The Planning Division shall issue a report concerning
     all special exception applications. The report shall evaluate the applicant's
     proposed special-exception use and any impacts associated with that use in light
     of (i) as-of-right uses and their potential impacts; and (ii) uses permitted by
     special exception on similarly situated land, including uses proffered as similarly
     situated by the applicant or an intervenor. Whenever the applicant is a religious
     institution or assembly, or whenever the applicant proposes that the property or
     properties at issue in the application be used, in any way, for religious purposes,
     the report shall evaluate the proposed use in light of RLUIPA. In light of these
     and other appropriate evaluations, the report shall recommend to grant, deny, or
     take other appropriate action on the proposed use, whether or not the proposed use
     is contested or a hearing is scheduled before any City board or before the City
     Commission.

c.    <u>Development Review Board Hearing</u>.  The Development Review Board shall conduct a de novo review of the proposed special-exception use, including a de novo review of all applicable facts and laws.  The Board's review shall take account of, among other things: (i) the Planning Division report, (ii) any submissions made by the applicant or any intervenors; (iii) stipulated evidence; (iv) the parties' exceptions to and support of the special-exception application; and (v) any other relevant materials.  Whenever the applicant is a religious institution or assembly, or whenever the applicant proposes that the property or properties at issue in the application be used, in any way, for religious purposes, the Development Review Board shall evaluate the proposed use in light of RLUIPA.

d.    <u>City Commission Hearing.</u>  If the City Commission elects to hold a hearing on any application for a special exception, or to hear an appeal from any decision of the Development Review Board with respect to any application for a special exception, the City Commission will conduct a de novo review of the proposed special-exception use, including a de novo review of all applicable facts and laws. The Commission's review shall take account of, among other things: (i) the Planning Division report, (ii) any submissions made by the applicant or any intervenors; (iii) stipulated evidence; (iv) the parties' exceptions to and support of the special-exception application; and (v) any other relevant materials.  Whenever the applicant is a religious institution or assembly, or whenever the applicant proposes that the property or properties at issue in the application be used, in any

way, for religious purposes, the City Commission shall evaluate the proposed use in light of RLUIPA.

## IV.  NOTICE

28.     Within 60 days of the date of entry of this Order, the City shall implement the following procedures to ensure notice to the public of this Order and its effects:

a.      Signage. The Planning Division shall post and maintain a printed sign within sight of each public entrance to the Planning Division offices.  The sign shall state in bold, block letters, at least one-inch high, that the City of Hollywood does not discriminate against religious exercise in violation of RLUIPA, and shall state that the City has entered into this Order and will provide a copy of it to any person upon request.  The text of this sign will conform to Appendix A.

b.      Internet Posting. Both the Planning Division and the City of Hollywood shall post and maintain on the first page of their respective Internet home pages a notice stating that the City of Hollywood does not discriminate against religious exercise in violation of RLUIPA.  The notice will state that the City has entered into this Order and will provide a copy of this Order to any person upon request.  The text of this posting is provided in Appendix B.

c.      Newspaper Publication. The City shall purchase advertising in the Miami Herald and the Ft. Lauderdale Sun Sentinel, for fourteen consecutive days, stating that the City does not discriminate against religious exercise in violation of RLUIPA. The notice will be of a size equivalent to at least one-quarter-page, shall be printed in

Page 9 of  24

at least 12-point font, and shall state that the City has entered into this Order and

will provide a copy of it to any person upon request.  The text of this publication

is provided in Appendix A.

    d.    <u>Notice to Past Religious Use Applicants</u>.  Within 90 days of the date of entry of

this Order, the City shall provide notice of this Order to every person, religious

assembly, or institution, since January 1, 2001, who or which had applied for and

was denied a special exception, or other individualized land use determination,

concerning the religious use of property.  The notice shall explain why the

Commission is contacting them and shall indicate that the Commission will

provide a copy of this Order upon request.  A copy of the form for this notice is

provided in Appendix A.

## V.   TRAINING

29.    Within ninety (90) days after the entry of this Order, the City shall provide training on the

requirements of RLUIPA to: (i) all City Commissioners; (ii) all managerial employees of

the City, including but not limited to, the City Manager, the Assistant City Manager, the

City Attorney, and the Chief of Police; (iii) all Code Enforcement officers or employees,

excluding clerical staff; (iv) all employees, excluding clerical staff, of the City Attorney's

Office; and (v) all Planning Division officers or employees, excluding clerical staff.  The

training shall be conducted by a qualified person or organization approved by the United

States.  The City shall pay all training costs.  Within one-hundred twenty (120) days after

the entry of this Order, the City shall secure and deliver to counsel for the United States a

written certification of each employee's attendance at the RLUIPA training, together with

a copy of all training materials, including but not limited to a course syllabus, if any.

30.   Within 30 days of the date of entry of this Order, the City shall conduct and complete the

following program for all persons with responsibilities relating to the implementation and

enforcement of all zoning or land use regulations, including all City Commissioners who,

at any time, cast a vote against granting a special exception; all Development Review

Board members; all Code Enforcement officers or employees; all employees of the City

Attorney's Office; and all Planning Division officers or employees.  Such program shall

include:

a.   Furnishing to each person a copy of this Order, and informing each such person,

in person, of the duties of the Planning Division and the Commission under this

Order; and

b.   Securing a signed statement, appearing at Appendix C, from each such person

stating that he or she has received, has read, and understands this Order and the

policy of nondiscrimination mandated by this Order, and further understands that

violation of this Order may result in sanctions against the City.

31.   For the duration of this Order, each person with responsibilities relating to the

implementation and enforcement of all zoning or land use regulations within the City of

Hollywood shall be given a copy of, and be required to read this Order, and shall sign the

statement appearing at Appendix C, within 10 days after the date he or she commences

membership, employment, or an agency relationship with the City Attorney's Office, the

Planning Division, the Code Enforcement Division, the Development Review Board, or City Commission.

32.     The statements prescribed by this section of the Order shall be maintained in the offices of both the Planning Division and the City Attorney for the City of Hollywood for the duration of this Order.

## VI.    COMPLAINT PROCEDURE

33.     Within 90 days of the date of entry of this Court, the Planning Division and Commission shall establish the following procedure to address complaints by any person who believes that the City, either officially or through any one of its officers, employees, or agents, since January 1, 2001, or during the duration of this Order, and in connection with any application for a special exception or other individualized land use determination concerning a religious land use, may have violated or may violate the United States Constitution or federal law.  Upon complaint by such person, the City, through one of its officers, employees, or agents, shall offer to provide a written form to the complainant, and shall provide that form upon request.  A copy of this form is attached as Appendix D. If the complaint is written, the Planning Division shall accept and maintain the original complaint and any proposed or actual action taken by the City in response to the complaint.  If the complaint is oral, the City through one of its officers, employees, or agents, shall prepare a written summary of the complaint along with the name, address, phone number, and other identifying information of the complainant and any proposed or actual action taken by the City in response to the complaint.  Upon receiving any

complaint, the City shall offer to provide to the complainant a copy of this Order, and shall provide a copy of this Order to the complainant upon request.

## VII.  REMEDY FOR PAST ACTIONS

34.    In order to remedy past actions in this case, the City shall allow HCS to operate at 2215 and 2221 North 46th Avenue as a house of worship as a matter of right in perpetuity. This Order incorporates by reference paragraphs 1–4, inclusive, of the Consent Decree entered between the Hollywood Community Synagogue and the City of Hollywood in Hollywood Community Synagogue v. City of Hollywood, No. 04-cv-61212 (S.D. Fla. 2004), which Decree is attached as Exhibit 1 to this Order.

35.    Within 15 days of the entry of this Order, the City Attorney shall advise the City Commission on the record of the terms of this Order.  The City Commission shall also vacate all stop-work or similar orders prohibiting activity at 2215 and 2221 North 46th Avenue, Hollywood, Florida, and direct the City Attorney to file a motion withdrawing, with prejudice, any legal actions, pending in any court, by the City against HCS or its agent or representative.

## VIII.  REPORTING, RECORD-KEEPING, AND MONITORING

36.    No later than 180 days after the date of entry of this Order, the City shall send a report evidencing its compliance with this Order to counsel for the United States.[1]  This report shall consist of the following:

---

[1]   For purposes of this Order, all submissions to the United States or its counsel should be submitted to: Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530, Attn: DJ# 210-18-3, Fax: 202-514-1116, or as otherwise directed by the United States.

a.   A signed declaration by each of the member of the City Commission stating that the City has complied with Sections II–VII of this Order;

b.   Appropriate documentary evidence, including but not limited to the text of all new policies or procedures implemented as a result of this Order, demonstrating the City's compliance with Sections II–VII of this Order; and

c.   Copies of all signed statements from each person described in paragraphs 29–31 of this Order.

37.   Nine months after the date of entry of this Order, and every six months thereafter until this matter is dismissed with prejudice against Defendant, Defendant shall send to counsel for the United States a written report evidencing continuing compliance with this Order. This report shall contain the following information:

a.   Copies of all new signed statements at Appendix C from each person described in paragraph 31, above, that have not been previously provided to counsel for the United States;

b.   Any written or oral complaint described in paragraph 33 of this Order. If the complaint is written, the City shall provide a copy; if the complaint is oral, the City shall provide a copy of the written summary described in Section VI or this Order.

c.   The Planning Division and the City shall, until this lawsuit is dismissed with prejudice as described in Section IX, below, preserve all records that are the source of or that contain any of the information pertinent to the City's obligations

under this Order. Upon reasonable notice to the City Attorney, representatives of the United States shall be permitted to inspect and copy all pertinent records of the City at any and all reasonable times; provided, however, that the United States shall endeavor to minimize any inconvenience to the Planning Division or City Commission from inspection of such records.

### IX.   DURATION OF ORDER AND TERMINATION OF LEGAL ACTION

38.   This Consent Order shall remain in effect for five (5) years after the date of its entry, or for three (3) years after the date the City's new special exception procedures take effect, whichever is later.

39.   The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice. The United States may move the Court to extend the duration of the Order in the interests of justice.

40.   The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution. However, in the event of a failure by Defendant to perform in a timely manner any act required by this Order or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized at law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and costs and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

### X.   TIME FOR PERFORMANCE

41.   Any time limits for performance imposed by this Consent Order may be extended by the

Page 15 of 24

mutual written agreement of the United States and the relevant Defendants.

## XI.   ENFORCEMENT OF THIS ORDER

42.   Except as provided in paragraph 43 below, any failure to comply with any or all of the

provisions of this Order shall subject Defendant to findings of contempt, and the United

States may seek any and all relief from this Court against Defendant for noncompliance.

43.   In the event that the City Commission fails to comply with paragraph 35, above, or to

allow HCS to operate as a house of worship in compliance with paragraph 34, above,

Defendant will be subject to a show cause order as to why it should not be held in

contempt of this Court, and the United States may seek any and all relief from this Court

against Defendant for a finding of contempt.

## XII.   COSTS OF LITIGATION

44.   Each party to this litigation will bear its own costs and attorneys' fees associated with this

litigation.

ENTERED THIS ____ day of _____, 2006.


_____
JOAN A. LENARD
UNITED STATES DISTRICT JUDGE

The undersigned apply for and consent to the entry of this Order:

Dated __7/5__, 2006

FOR THE UNITED STATES:

Wan J. Kim
Assistant Attorney General

Steven H. Rosenbaum
Chief
Michael S. Maurer
Deputy Chief
Sean R. Keveney
R. Tamar Hagler
Trial Attorneys
Civil Rights Division
United States Department of Justice
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Tel.: (202) 514-4838
Fax: (202) 514-1116
Email: sean.r.keveney@usdoj.gov
Fla. Bar No. A5500926
*Counsel for the United States*

R. Alexander Acosta
United States Attorney

Marilynn Lindsey
Assistant U.S. Attorney
Wendy Jacobus
Assistant U.S. Attorney
500 E. Broward Blvd
Ft. Lauderdale, Fl. 33394
Tel: (954) 356-7255
Fax: (954) 356-7336
*Counsel for the United States*

FOR THE CITY OF HOLLYWOOD:

Daniel Abbott
City of Hollywood
2600 Hollywood Boulevard, Room 407
Hollywood, FL 33020
Tel.: (954) 921-3435
Fax: (954) 921-3081
*City Attorney*

Thomas J. McCausland
Conroy, Simberg, Ganon, Krevans & Abel, PA
3440 Hollywood Boulevard
Hollywood, FL 33021
Tel.: (954) 961-1400
Fax: (954) 967-8577
*Counsel for the City of Hollywood*

Cameron Benson
City of Hollywood
2600 Hollywood Boulevard, Room 407
Hollywood, FL 33020
*City Manager*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-61212/05-60687 (Lenard/Klein)

United States    )
                 )
        Plaintiff,    )
                 )          CONSENT ORDER: APPENDIX A
    vs.          )
                 )
City of Hollywood    )
                 )
        Defendant.    )
                 )

## APPENDIX A

On _____, 2006, the United States District Court for the Southern District of

Florida entered a Consent Order resolving a religious-discrimination lawsuit brought by the United

States against the City of Hollywood under the Religious Land Use and Institutionalized Persons Act

of 2000 ("RLUIPA"), for the City's treatment of the Hollywood Community Synagogue. Under the

terms of the Consent Order the City of Hollywood is required, among other things, to inform all

applicants for any special exception to the City's zoning code of the applicant's rights under the RLUIPA.

Under RLUIPA, no government, including the City of Hollywood, may apply its zoning or land

use laws in a manner that imposes a substantial burden on the religious exercise of a person, including

a religious assembly or institution. RLUIPA also provides that no government, including the City of

Hollywood, may apply a land use regulation in a manner that treats a religious assembly or institution

(a church, for example) on less than equal terms than a nonreligious institution or assembly (a day care

center or movie theater). Finally, RLUIPA provides that no government, including the City of

Hollywood, may impose a land use regulation in a manner that discriminates against a religious assembly

or institution.

If you believe that any local government or municipality has discriminated against you in the implementation of its zoning or land use laws, please contact the United States Department of Justice at:

**(202) 514-4713**

You may also write to:

***United States Department of Justice***
***Civil Rights Division***
***Housing and Civil Enforcement Section***
***950 Pennsylvania Ave. N.W. -G St***
***Washington, DC 20530***

If you would like a copy of the Consent Order referenced above and entered in United States v. City of Hollywood, Civ. No. 05-60687 (S.D. Fla.), please contact the office of the City Attorney for the City of Hollywood at (954) 921-3435, and you will be provided with a copy free of charge.

**Page 20 of 24**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-61212/05-60687 (Lenard/Klein)

| | | |
|---|---|---|
| United States | ) | |
| | ) | |
| Plaintiff, | ) | CONSENT ORDER: APPENDIX B |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Hollywood | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**APPENDIX B**

**NOTICE OF NONDISCRIMINATION POLICY**

CONSISTENT WITH THE UNITED STATES CONSTITUTION AND THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT OF 2000, THE CITY OF HOLLYWOOD DOES NOT DISCRIMINATE ON THE BASIS OF RELIGION IN THE APPLICATION OF ITS LAWS, POLICIES, OR PROCEDURES, INCLUDING THE APPLICATION OF ITS LAND USE REGULATIONS AND ZONING LAWS.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-61212/05-60687 (Lenard/Klein)

| | | |
|---|---|---|
| United States | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CONSENT ORDER: APPENDIX C |
| vs. | ) | |
| | ) | |
| City of Hollywood | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**APPENDIX C**

**CERTIFICATION OF RECEIPT OF CONSENT ORDER**

I _____, certify that I have received the Consent Order

entered in United States v. City of Hollywood, Civ. No. 05-60687 (S.D. Fla.). I further certify that I have

read and understand the aforementioned Consent Order, that all my questions were answered concerning

it, and that I understand that my violation of this Consent Order may result in sanctions against the City

of Hollywood.

_____
(Signature)

_____
(Print name)

_____
(Date)

Page 22 of 24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-61212/05-60687 (Lenard/Klein)

| | | |
|---|---|---|
| United States | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CONSENT ORDER: APPENDIX D |
| vs. | ) | |
| | ) | |
| City of Hollywood | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**APPENDIX D**

**COMPLAINT AGAINST THE CITY OF HOLLYWOOD**

Under the terms of a settlement with the United States Department of Justice, the City of Hollywood is required to perform certain actions to ensure that it does not violate RLUIPA, including processing this complaint and providing you with a free copy of the Consent Oder entered in United States v. City of Hollywood, Civ. No. 05-60687 (S.D. Fla.).

Name:_____

Address: _____

Telephone: _____


Please state briefly the nature of the service or request that you made of the City of Hollywood (e.g., special exception, variance, etc.). In addition, please include a description of the religious land use or institution at issue in your request:

_____

_____

_____

**Page 23 of 24**

Please state briefly in what way(s) you believe that the City of Hollywood may have violated your rights under the United States Constitution, federal law, the Florida State Constitution, Florida State law, or the City of Hollywood Code:

_____

_____

_____

If you believe that the City of Hollywood, or any other local government or municipality, has discriminated against you in the implementation of its zoning or land use laws, in addition to completing this complaint, please contact the United States Department of Justice at:

**(202) 514-4713**

You may also write to:

**United States Department of Justice**
**Civil Rights Division**
**Housing and Civil Enforcement Section**
**950 Pennsylvania Ave. N.W. -G St**
**Washington, DC 20530**

**Gordon, Jason T.**

**From:**   CBH-Chad B. Hess [chess@conroysimberg.com]
**Sent:**   Wednesday, July 05, 2006 2:07 PM
**To:**   Gordon, Jason T.
**Subject:** RE: Revised Joint Motion with only one case cite

Please file.

Chad B. Hess, Esquire
Conroy, Simberg, Ganon, Krevans, Abel,
Lurvey, Morrow & Schefer, P.A.
3440 Hollywood Boulevard, Second Floor
Hollywood, Florida 33021
Telephone:  954-961-1400, x1280
Telecopier:  954-967-8577
www.conroysimberg.com

    -----Original Message-----
**From:** Gordon, Jason T. [mailto:JTGordon@arnstein.com]
**Sent:** Wednesday, July 05, 2006 2:05 PM
**To:** CBH-Chad B. Hess; TJM-Thomas J. McCausland; Carlos E. Mustelier; W. Todd Boyd;
roldershaw@hollywoodfl.org; Sean.R.Keveney@usdoj.gov; Tamar.Hagler@usdoj.gov
**Subject:** Revised Joint Motion with only one case cite

    Here is the revision. Please send me your e-mails. Thanks.

| **Jason Gordon** | **Arnstein & Lehr LLP** |
|---|---|
| *Associate* | 200 East Las Olas Boulevard |
| | Suite 1700 |
| | Ft. Lauderdale, Florida 33301 |
| | 954-713-7600 (Main) |
| | 954-713-7611 (Direct) |
| | 954-713-7700 (Main Fax) |
| jtgordon@arnstein.com | 954-713-7711 (Direct Fax) |

**********************************************************************
This electronic mail transmission may contain confidential or privileged information.  If you believe that you have
received this message in error, please notify the sender by reply transmission and delete the message without
copying or disclosing it.
**********************************************************************



**Gordon, Jason T.**

| | |
|---|---|
| **From:** | Carlos E. Mustelier [cmustelier@boydlawgroup.com] |
| **Sent:** | Wednesday, July 05, 2006 2:05 PM |
| **To:** | Gordon, Jason T.; CBH-Chad B. Hess; TJM-Thomas J. McCausland; W. Todd Boyd; roldershaw@hollywoodfl.org; Sean.R.Keveney@usdoj.gov; Tamar.Hagler@usdoj.gov |
| **Subject:** | RE: Revised Joint Motion with only one case cite |

We are in agreement with the motion as written.


**From:** Gordon, Jason T. [mailto:JTGordon@arnstein.com]
**Sent:** Wednesday, July 05, 2006 2:05 PM
**To:** CBH-Chad B. Hess; TJM-Thomas J. McCausland; Carlos E. Mustelier; W. Todd Boyd; roldershaw@hollywoodfl.org; Sean.R.Keveney@usdoj.gov; Tamar.Hagler@usdoj.gov
**Subject:** Revised Joint Motion with only one case cite

Here is the revision. Please send me your e-mails. Thanks.


| **Jason Gordon** | **Arnstein & Lehr LLP** |
|---|---|
| *Associate* | 200 East Las Olas Boulevard |
| | Suite 1700 |
| | Ft. Lauderdale, Florida 33301 |
| | 954-713-7600 (Main) |
| | 954-713-7611 (Direct) |
| | 954-713-7700 (Main Fax) |
| jtgordon@arnstein.com | 954-713-7711 (Direct Fax) |

******************************************************************************
This electronic mail transmission may contain confidential or privileged information. If you believe that you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
******************************************************************************

7/5/2006

**Gordon, Jason T.**

| | |
|---|---|
| **From:** | Sean.R.Keveney@usdoj.gov |
| **Sent:** | Wednesday, July 05, 2006 1:54 PM |
| **To:** | Gordon, Jason T. |
| **Subject:** | RE: Revised Joint Motion (minor change) |

Jason,

The United States concurs with the below Joint Motion.

Regards,

Sean

-----Original Message-----
From: JTGordon@arnstein.com [mailto:JTGordon@arnstein.com]
Sent: Wednesday, July 05, 2006 1:50 PM
To: Hagler, Tamar (CRT); Keveney, Sean R (CRT); chess@conroysimberg.com;
tmccausland@conroysimberg.com; tboyd@boydlawgroup.com; cmustelier@boydlawgroup.com;
roldershaw@hollywoodfl.org
Subject: Revised Joint Motion (minor change)

The DOJ indicated that it must reserve its rights as well on the hearing issue.  Please
see the revised version of paragraph no. 5 indicating that change.  Please respond via e-
mail, as per my prior request, whether you approve the form of the Motion ASAP so we can
get the motion to our Miami office for filing before 3 p.m.  Thanks.


Jason Gordon
Associate
Arnstein & Lehr LLP
200 East Las Olas Boulevard
Suite 1700
Ft. Lauderdale, Florida 33301
<blocked::http://maps.yahoo.com/py/maps.py?Pyt=Tmap&addr=200+East+Las+Ol
as+Boulevard&csz=Ft.+Lauderdale,+Florida+33301&country=us>
jtgordon@arnstein.com <mailto:jtgordon@jtgordon@arnstein.com>
954-713-7600 (Main)
954-713-7611 (Direct)
954-713-7700 (Main Fax)
954-713-7711 (Direct Fax)


*********************************************************************************
***********

This electronic mail transmission may contain confidential or privileged information.  If
you believe that you have received this message in error, please notify the sender by
reply transmission and delete the message without copying or disclosing it.

*********************************************************************************
***********